## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **JOSHUA WILSON**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SLYDES CARWASH LLC**,<br><br>Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## **CLASS ACTION COMPLAINT**

1. Joshua Wilson ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Slydes Carwash LLC ("Slydes" or "Defendant").

2. This Class Action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. This case is also brought pursuant to the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act").

4. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

5. Now, Plaintiff brings this Class Action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

1

## PARTIES

6. Plaintiff, Joshua Wilson, is a natural person and a citizen of Fort Worth, Texas. He is domiciled in Texas (where he intends to remain).

7. Defendant Slydes Carwash LLC is a Limited Liability Company formed in Texas and with its principal place of business at 6105 Southridge Pkwy, Parker, Texas 75002.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

9. This Court has personal jurisdiction over Defendant because it is headquartered in Texas, regularly conducts business in Texas—including by directing telemarketing calls to Texas residents—and has sufficient minimum contacts in Texas.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

11. This Court has supplemental jurisdiction over Plaintiff's Texas law claim pursuant to 28 U.S.C. § 1367 because the claim forms part of the same case or controversy as Plaintiff's federal TCPA claims.

## BACKGROUND

*The Telephone Consumer Protection Act*

12. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

13. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable

acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

14. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

15. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

16. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

17. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

18. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

19. The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

20. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

21. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***The Texas Telephone Solicitation Act***

22. The Texas Legislature enacted the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act"), to protect Texas residents from intrusive and unwanted telemarketing communications.

23. Like its federal counterpart, the Texas Act was enacted to safeguard the privacy rights of individuals and to prevent the nuisance, invasion of privacy, and disruption caused by unsolicited telemarketing communications.

24. The Texas Act regulates "telephone solicitations," which are defined as telephone calls or messages initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

25. The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has made a prior express request to

receive the communication or has otherwise provided prior express consent. Tex. Bus. & Com. Code § 305.053.

26. An "automatic dialing announcing device" includes equipment that stores or produces telephone numbers to be called and automatically dials those numbers and plays a recorded or automated message.

27. Telemarketing text messages sent using automated systems constitute "telephone solicitations" under the Texas Act when they are sent for the purpose of encouraging the purchase of goods or services.

28. The Texas Act provides a private right of action to any person who receives a telephone solicitation in violation of the statute. Tex. Bus. & Com. Code § 305.053.

29. A prevailing plaintiff may recover statutory damages of $500 for each violation.

30. If the trier of fact finds that the defendant knowingly or intentionally violated the Texas Act, the court may award additional damages as authorized by statute.

31. The Texas Act also authorizes injunctive relief to prevent further unlawful telephone solicitations.

*Plaintiff Joshua Wilson*

32. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

33. Plaintiff's residential telephone number is 469-836-XXXX (the "telephone number").

34. To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on November 17, 2024. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

35. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

36. Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past five (5) to six (6) years.

37. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

38. Plaintiff has never received a reimbursement from any business for his telephone number.

39. Plaintiff has never taken a business-related tax-deduction for his telephone number.

40. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

***Defendant Engages in Telemarketing***

41. Defendant offers "Express and Full Service car wash options, and professional car detailing services."[1]

42. Simply put, Defendant sells car washing services.

---

[1] *Car Wash Services*, SLYDE'S CAR WASH, https://slydescarwash.com/wash-services/ (last visited Feb. 18, 2026).

43. A screenshot of Defendant's website is provided below.[2]



44. To sell its services, Defendant engages in telemarketing campaigns.

***Defendant violated the TCPA***

45. As explained below, Defendant violated the TCPA numerous times.

46. Defendant first contacted Plaintiff by text message on May 23, 2024. Since then, Plaintiff has received at least nineteen (19) text messages, and likely more, all originating from the same short code: 30400.

47. The timing of Defendant's unlawful text campaign is straightforward:

---

[2] *Id*.

7

48. In May 2024, Defendant began sending promotional text messages to Plaintiff from short code 30400.

49. On May 23, 2024, Plaintiff received a promotional text offering a wash rewards club.

50. On May 30, 2024, Plaintiff received a promotional text offering coupons.

51. On June 6, 2024, Plaintiff received a text message regarding an offer for a free birthday surprise, despite the fact that June 6th is not Plaintiff's birthday, rendering the message misleading.

52. On June 13, 2024, Plaintiff received a text message regarding an offer for an "unlimited plan."

53. On September 13, 2024, Plaintiff responded "STOP," revoking any prior consent and requesting that the messages cease.

54. Defendant was required to honor Plaintiff's opt-out request within ten (10) business days.

55. On November 17, 2024, Plaintiff registered his telephone number on the National Do-Not-Call Registry and remained registered thereafter. More than thirty-one (31) days after registration, Defendant sent multiple additional telemarketing text messages to Plaintiff, including but not limited to those sent on and after June 15, 2025.

56. Accordingly, Plaintiff received more than one telemarketing text message from Defendant within a 12-month period after his number had been listed on the National Do-Not-Call Registry for more than thirty-one (31) days.

8

57. On February 8, 2025, after receiving additional promotional messages, Plaintiff again responded "STOP," again revoking any prior consent and demanding that the messages cease.

58. On June 15, 2025, through January 16, 2026, despite Plaintiff's repeated opt-out requests and DNC registration, Defendant continued sending promotional text message solicitations.

59. This timeline reflects that Defendant continued transmitting telemarketing messages after Plaintiff revoked consent and after his number was listed on the National Do-Not-Call Registry, in violation of federal and Texas law.

60. Despite Plaintiff's "STOP," requests, Defendant continued sending telemarketing text messages to Plaintiff's telephone number, including, on information and belief, the following:

    a. June 15, 2025

    b. July 1, 2025

    c. July 15, 2025

    d. July 17, 2025

    e. October 3, 2025

    f. October 23, 2025

    g. November 1, 2025

    h. December 16, 2025

    i. December 17, 2025

    j. December 18, 2025

    k. December 20, 2025

    l. January 9, 2026

    m.  January 16, 2026

  61.  In other words, Defendant texted Plaintiff's telephone number and attempted to solicit Plaintiff to purchase its services.

  62.  Defendant sent the above-described text messages using equipment that stores telephone numbers and automatically sends text messages to those numbers from a stored list without human intervention.

  63.  The text messages received by Plaintiff were uniform in format and content and were part of mass promotional campaigns offering discounts, sales, and limited-time promotions for Defendant's car wash services.

  64.  The messages were impersonal and generic in nature, containing standardized promotional language and embedded hyperlinks directing recipients to Defendant's website.

  65.  The text messages were sent from a short code, which is commonly used for automated, high-volume marketing campaigns. .

  66.  The volume, frequency, and timing of the messages—including multiple messages sent over the course of months despite Plaintiff's repeated "STOP" requests—demonstrate that the messages were transmitted automatically rather than manually by an individual employee..

  67.  Defendant's system could store lists of consumer telephone numbers and send identical promotional messages simultaneously or in rapid succession to numerous recipients.

  68.  The messages were sent without any human intervention at the time each message was transmitted.

  69.  Such equipment constitutes an "automatic dialing announcing device" as defined by Tex. Bus. & Com. Code § 305.001 and prohibited by § 305.053 when used without prior express consent.

70. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

71. Plaintiff's September 13, 2024, and February 8, 2025 "STOP" messages constituted clear and unequivocal revocations of any prior express consent. Despite these revocations, Defendant continued sending promotional text messages more than ten (10) business days after each revocation.

72. Defendant's continued messaging after multiple opt-out requests demonstrates a knowing and willful disregard of Plaintiff's statutory rights.

73. Defendant has demonstrated a pattern of ignoring opt-out requests and continues to use the same messaging platform, creating a real and immediate risk that Plaintiff will receive additional unlawful telemarketing text messages unless enjoined..

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this Class Action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.
>
> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.
>
> **Texas Telephone Solicitation Class:** All persons within the State of Texas: (1) received one or more marketing text messages from

      Defendant; (2) using the same or similar dialing equipment used to contact the Plaintiff; (3) within the four years prior to the filing of the Complaint.

75. Together, the various classes are referred to as the "Class."

76. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

77. Plaintiff reserves the right to amend the Class definition.

78. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

79. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

80. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

81. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarketing practices.

82. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's

counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

83. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

    a.    whether Defendant violated the TCPA;

    b.    whether Defendant violated the TCPA willfully and knowingly;

    c.    whether Plaintiff is entitled to statutory damages;

    d.    whether Plaintiff is entitled to treble damages;

    e.    whether Defendant should be enjoined from further TCPA violations.

84. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act

### Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)

### (On behalf of Plaintiff and the National Do-Not-Call Registry Class)

85. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

86. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by sending telemarketing solicitations, except for emergency purposes, to Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

87. Defendant violated the TCPA willfully or knowingly.

88. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

89. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

## SECOND CAUSE OF ACTION

### Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)

### (On behalf of Plaintiff and the Internal Do-Not-Call Registry Class)

90. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

91. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate…any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person

or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

92. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

93. Plaintiff and the Internal Do-Not-Call Class Members made requests to Defendant not to receive telemarketing solicitations from Defendant.

94. Defendant failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to call Plaintiff and the Internal Do-Not-Call Class Members to harass them into making purchases from Defendant.

95. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) institute procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) implement a written policy, available upon demand, for maintaining a do-not-call list; and (3) train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

96. Plaintiff and the Internal Do-Not-Call Class Members are informed and believe that Defendant (1) has not instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) has not implemented a written policy, available upon demand, for maintaining a do-not-call list; and (3) does not train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

97. The details and specific facts regarding Defendant's failure to maintain the required policies, implement the required procedures, and train its personnel regarding the same, are solely within Defendant's knowledge and possession.

98. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Internal Do-Not-Call Class despite having asked Defendant to cease its telephonic solicitations.

99. Defendant violated the TCPA willfully or knowingly.

100. Plaintiff and Internal Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone solicitation.

101. Plaintiff and Internal Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Internal Do-Not-Call Class Members.

### THIRD CAUSE OF ACTION

**Violation of the Texas Telephone Solicitation Act**

**(Tex. Bus. & Com. Code § 305.001 et seq.)**

**(On behalf of Plaintiff and the Texas Subclass)**

102. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

103. The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has provided prior express consent. Tex. Bus. & Com. Code § 305.053.

104. The Texas Act defines "telephone solicitation" as a telephone call or message that is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

105. Text messages that promote goods or services constitute "telephone solicitations" under the Texas Act.

106. At all relevant times, Plaintiff was a resident of Texas and received Defendant's telemarketing text messages in Texas.

107. Defendant's text messages were sent using an automatic dialing system or similar automated technology that qualifies as an automatic dialing announcing device under the Texas Act.

108. Defendant's conduct constitutes multiple violations of Tex. Bus. & Com. Code § 305.053.

109. The Texas Act provides a private right of action for a person who receives a communication in violation of the statute.

110. As a result of Defendant's violations of the Texas Act, Plaintiff is entitled to recover statutory damages of $500 per violation and attorney's fees.

111. If the Court finds that Defendant knowingly or intentionally violated the Texas Act, Plaintiff is entitled to recover additional damages as permitted by statute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certifying this case as a Class Action on behalf of Plaintiff and the Class, appointing Plaintiff as Class representative, and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED AND DATED this 25th day of February, 2026.

>/s/ Anthony I. Paronich
>Anthony I. Paronich
>**PARONICH LAW, P.C.**
>350 Lincoln St., Suite 2400
>Hingham, MA 02043
>Telephone: (617) 485-0018
>anthony@paronichlaw.com
>
>Samuel J. Strauss
>Cassandra P. Miller
>**STRAUSS BORRELLI PLLC**
>One Magnificent Mile
>980 N Michigan Avenue, Suite 1610
>Chicago, IL 60611
>Telephone: (872) 263-1100
>Facsimile: (872) 263-1109
>sam@straussborrelli.com
>cmiller@straussborrelli.com
>
>*Counsel for Plaintiff Joshua Wilson*